IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE JAMES SALEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-CV-06531 |
| | ) | |
| JEROME LARKIN, officially and individually, and ILLINOIS ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION, an Illinois state agency, | ) ) ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Maurice James Salem sues the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), and its Administrator, Jerome Larkin, alleging that defendants' constitutional violations led to his suspension from the practice of law. Salem also alleges that defendants violated the Equal Protection Clause by posting a false disciplinary summary about him on the ARDC website. Lacking jurisdiction pursuant to the *Rooker-Feldman* doctrine, the Court dismisses the claims challenging Salem's suspension. That doctrine does not deny the Court jurisdiction over Salem's false-publication claim, but that claim fails on the pleadings because Salem has failed to foreclose a conceivable rational purpose for posting that summary. It is entirely plausible that defendants sought to inform the public of Salem's disciplinary status pursuant to a reasonable interpretation of the Illinois Supreme Court's decision to suspend him. The Court therefore dismisses with prejudice Salem's false publication claim under Federal Rule of Civil Procedure 12(b)(6). Judgment will be entered for the defendants.

## BACKGROUND[1]

Salem is an attorney who resides in New York and Illinois. Although Salem is licensed to practice law New York, he is not admitted to the Illinois bar. Salem has represented parties in Illinois courts on a *pro hac vice* basis. Rule 707 of the Illinois Supreme Court Rules allows out-of-state attorneys like Salem to appear in Illinois state courts and outlines the rules and procedures for such appearances. That rule also subjects out-of-state attorneys appearing *pro hac vice* to the authority of the Illinois Supreme Court and the ARDC. Under Rule 707(j), the ARDC Administrator may institute disciplinary proceedings against out-of-state attorneys for the unauthorized practice of law.

In 2015, an ARDC attorney moved to terminate Salem's permission to appear *pro hac vice* in several state-court cases, based upon Salem's alleged misrepresentations about his licensure in Illinois. Contending that the ARDC's factual allegations were false, Salem sued the ARDC attorney, as well as the ARDC and defendant Larkin, in federal court. *Salem v. Kozlov*, No. 15 C 8997, 2016 WL 4169102, at *2 (N.D. Ill. Aug. 8, 2016). The judge presiding over that case granted the defendants' motion to dismiss without prejudice.

In April 2016, while the federal court proceeding was pending, the ARDC filed a disciplinary complaint against Salem, alleging that Salem was falsely holding himself out as an Illinois attorney. A hearing proceeded before the ARDC's Hearing Board, which considers

---

[1] In summarizing the relevant background facts, the Court accepts as true the well-pleaded allegations in Salem's complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court may also consider matters of public record without converting a motion to dismiss into a motion for summary judgment. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). The Court takes judicial notice of the filings in Salem's ARDC and Illinois Supreme Court proceedings because those documents are matters of public record. *See Bilal v. Wolf*, No. 06 C 6978, 2009 WL 1871676, at *1 (N.D. Ill. June 25, 2009); *Bartoli v. Att'y Registration & Disciplinary Comm'n*, No. 97 C 3412, 1998 WL 100246, at *1 (N.D. Ill. Feb. 24, 1998).

evidence and makes findings of fact in disciplinary matters. Ill S. Ct. R. 753(c)(3). In its discretion, the Hearing Board may also recommend that the Illinois Supreme Court impose discipline upon an attorney. *Id.* In Salem's case, the Hearing Board issued a report in October 2017, finding that Salem had inadvertently misrepresented to an Illinois state-court judge that he was an Illinois attorney but that he did not commit any other professional misconduct. Accordingly, the Hearing Board recommended censure but no further discipline. The Chicago Law Bulletin reported on the Hearing Board's recommendation in Salem's case. In the article, Salem criticized the ARDC for the proceedings against him, remarking that "[e]verybody knows that something is wrong with the ARDC, but nobody is publishing it." Compl. Ex. B. at 4, ECF. No. 1.

Salem's disciplinary case did not end with the Hearing Board's action. Any party to a disciplinary hearing—including the ARDC—may appeal to the ARDC's Review Board. Ill S. Ct. R. 753(d)(2). As its name suggests, the Review Board is the ARDC's appellate body tasked with reviewing the Hearing Board's findings. Ill S. Ct. R. 753(d)(3). Larkin, in his capacity as the ARDC Administrator, appealed the Hearing Board's decision, seeking Salem's suspension for ninety days and until further court order. On October 31, 2018, however, the Review Board affirmed the Hearing Board findings and agreed with the censure recommendation.

One further avenue of appeal is available to parties seeking review of disciplinary proceedings. Either party to a disciplinary proceeding may file a Petition for Leave to File Exceptions ("PLE") to the Illinois Supreme Court. Ill S. Ct. R. 753(e)(1). A party filing a PLE must explain to the Supreme Court not only why the Supreme Court should review the petition but also why the Review Board's decision was incorrect. Ill S. Ct. R. 753(e)(3). If the Supreme Court allows exceptions, it may "enter a final order as recommended by the Review Board or as

3

otherwise determined by the Court;" remand the case back to the Hearing Board or Review Board; or accept the matter for further consideration and invite further briefing. Ill S. Ct. R. 753(e)(5). A party opposing the PLE has an opportunity to file an answer explaining why the petition should not be granted. Ill S. Ct. R. 753(e)(4).

In Salem's case, Larkin filed a PLE before the Illinois Supreme Court, again arguing that Salem should be suspended from practicing law for ninety days until further order of the court for wrongfully holding himself out as an Illinois attorney. Salem did not answer Larkin's PLE. The Illinois Supreme Court allowed Larkin's exceptions but did not accept the matter for further consideration. Instead, the court entered a final order suspending Salem from practicing law for ninety days or until further order. The Illinois Supreme Court did not explain the basis for its order.[2]

After the Illinois Supreme Court suspended Salem, the ARDC posted a summary of Salem's disciplinary proceedings under his profile on its website. The summary explains that "the Supreme Court of Illinois suspended [Salem] for ninety days and until further order of the Court for dishonestly holding himself out to the public as an Illinois lawyer." Compl. Ex. A, ECF. No. 1.

Salem sued the ARDC and Larkin, in his official and individual capacities, in this Court. His complaint purports to assert three "causes of action," but no such creatures exist in federal pleadings. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("'Cause of action' does not appear in the Rules of Civil Procedure, which uses 'claim for relief' to denote a rejection of both common law and code approaches" to pleading practice). What Salem denotes

---

[2] Pursuant to the Illinois Supreme Court's order, Salem had to seek reinstatement after the suspension period expired. At the time Salem filed this lawsuit, the Hearing Board had rejected Salem's reinstatement request and Salem was appealing that decision to the Review Board.

4

as "causes of action" are legal theories that assertedly provide a basis for the legal relief sought by Salem's claims. "Complaints plead claims, which is to say grievances." *ACF 2006 Corp. v. Mark C. Ladendorf, Att'y at L., P.C.*, 826 F.3d 976, 981 (7th Cir. 2016). "A claim is the aggregate of operative facts which give rise to a right enforceable in the courts." *Florek v. Village of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011) (cleaned up).

As the opening of his complaint sets forth (albeit unintentionally), Salem asserts two claims. Compl. ¶ 1, ECF No. 1 ("This … action is based on two (2) separate and distinct acts performed by the Defendants"). The first claim is based on publication of the disciplinary summary on the ARDC website (*id*. ¶ 2); the second, on his suspension from practicing law (*id*. ¶ 3). As to the publication claim, Salem asserts that it entitles him to relief because the publication violated the Equal Protection Clause. Salem alleges that his suspension and subsequent reinstatement proceedings violated both his substantive and procedural due process rights. Salem seeks damages as well as an injunction directing defendants to remove the disciplinary summary from the ARDC website.

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the Court lacks jurisdiction over Salem's claims and that Salem fails to state a claim for relief. Salem abandoned his procedural due process theory in his response and sur-reply briefs, agreeing with the defendants that "the Third Cause of Action can be dismissed" under Rule 12(b)(1) pursuant to the *Rooker-Feldman* doctrine. Pl.'s Sur-Reply at 7, ECF No. 36; *see also* Pl.'s Resp. at 6-7, ECF No. 32. Salem has therefore failed to meet his burden of showing that the Court has subject-matter jurisdiction over the claims supporting his "Third Cause of Action," namely that defendants violated his procedural due process rights during his suspension

5

and subsequent reinstatement proceedings. *See City of Evanston v. Barr*, 412 F. Supp. 3d 873, 880 (N.D. Ill. 2019). The Court therefore addresses only his remaining claims.

## DISCUSSION

When faced with both a motion to dismiss for lack of jurisdiction and a motion for failure to state a claim, a court must address the threshold jurisdictional issues presented under Rule 12(b)(1) first. *See Chen v. Yellen*, No. 3:20-CV-50458, 2022 WL 2818709, at *2 (N.D. Ill. July 19, 2022). Accordingly, the Court begins with jurisdiction.

### I. Subject-Matter Jurisdiction

In evaluating a 12(b)(1) motion, this Court accepts as true all well-pleaded factual allegations and draws reasonable inferences in the plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). To evaluate jurisdictional facts, however, the Court may also look beyond the complaint to any evidence submitted on the issue. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam). The Court looks to Salem's allegations, as well as the exhibits submitted by both parties, in assessing jurisdiction.

Defendants argue that the Court lacks jurisdiction over Salem's claims pursuant to the *Rooker-Feldman* doctrine. Under that doctrine, no federal court, apart from the Supreme Court, may exercise jurisdiction to review a state court decision. *Nesses v. Shepard*, 68 F.3d 1003, 1004 (7th Cir. 1995) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).[3] The *Rooker-Feldman* doctrine is a corollary to Congress's grant of exclusive appellate jurisdiction over final state-court judgements

---

[3] As the Seventh Circuit has confirmed, "[s]pecific congressional authorization of collateral review of state court judgments is the exception to this rule. For example, habeas corpus under 28 U.S.C. § 2241 provides for collateral review of state court judgments by inferior federal courts and is an exception to the general principle of *Rooker–Feldman*." *Garry v. Geils,* 82 F.3d 1362, 1365 n.4 (7th Cir. 1996).

to the U.S. Supreme Court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005); 28 U.S.C. § 1257. *Rooker-Feldman* therefore automatically bars any claim that facially seeks to set aside a final state-court judgment. *See Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004).

*Rooker-Feldman* also prohibits another type of claim that impedes upon the Supreme Court's appellate jurisdiction over state court decisions: one that is "inextricably intertwined" with a state court judgement. *Id*. at 532-33. Even if a party is not directly seeking to overturn a state-court judgment, a federal court must decline to exercise jurisdiction if it is "in essence being called upon to review the state-court decision." *Levin v. Att'y Registration & Disciplinary Comm'n of Supreme Ct. of Illinois*, 74 F.3d 763, 766 (7th Cir. 1996) (quoting *Feldman*, 460 U.S. at 483–84 n.16). In this inquiry, the cause of plaintiff's injury is key. *See Commonwealth Plaza Condo. Ass'n v. City of Chicago*, 693 F.3d 743, 746 (7th Cir. 2012); *Holt v. Lake Cnty. Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005). If a state-court judgment caused the injury that the plaintiff asks a federal court to redress, a federal court would have to review that judgment to provide relief. But that would involve impermissible appellate review that *Rooker-Feldman* prohibits. By contrast, an injury that occurs independently of the state-court judgment does not require review of that judgment and is therefore redressable by a federal court. *Exxon Mobil*, 544 U.S. at 293; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999). The Court thus examines Salem's claims and determines whether the Illinois State Court decision to suspend him caused his alleged injuries.

Salem first alleges that defendants violated the Equal Protection Clause by publishing a false statement about Salem on the ARDC website. The published statement is false, according to Salem, because the ARDC Hearing and Review Boards did not find the misconduct that the

ARDC alleged, and the Illinois Supreme Court did not explicitly affirm that factual finding. Salem alleges that defendants published the statement to harass him in retaliation for his lawsuit against and criticism of the ARDC.

Setting aside, for now, the merits of Salem's false-publication claim, that claim does not implicate the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court." *Richardson v. Koch L. Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014). Here, the source of Salem's claimed injury—the alleged falsity of the published statement—does not hinge upon the Illinois Supreme Court's actions in granting Larkin's PLE. Evaluating the truth of the ARDC's statement about Salem would perhaps involve examining the Illinois Supreme Court decision, but it would not require the Court to review state-court action. Whatever the reasoning behind the Illinois Supreme Court's decision, the ARDC's allegedly misleading portrayal of the decision, rather than the decision itself, caused Salem's alleged reputational injury. Because his injury exists independently from the state-court judgment, the *Rooker-Feldman* doctrine, at least, does not bar Salem's claim based upon defendants' allegedly false publication.

The doctrine does, however, doom Salem's claims challenging his suspension. Salem alleges that the defendants violated the Equal Protection Clause by vindictively suspending him and violated his substantive due process rights by suspending him from the practice of law in Illinois *sua sponte*. Although Salem sues the ARDC and Larkin, rather than the Illinois Supreme Court, these claims challenge action by the Illinois Supreme Court—namely, his suspension.[4]

---

[4] Although Salem alleges that the Illinois Supreme Court suspended his law license, that is a mischaracterization of the state Supreme Court's order. Salem was never admitted to the Illinois bar, so he never had an Illinois law license that the Illinois Supreme Court could suspend. Instead, the Illinois Supreme Court suspended Salem "from the practice of law," which in

Indeed, Salem recognizes that only the Illinois Supreme Court has the power to suspend an individual from practicing law in Illinois.[5] The Seventh Circuit, moreover, has barred virtually identical claims pursuant to *Rooker-Feldman*, even when a plaintiff sues the ARDC instead of the state supreme court. *See Levin*, 74 F.3d at 767. By "fail[ing] to allege any injury independent of the Illinois Supreme Court's disciplinary hearings and its final decision" to suspend him, Salem "impermissibly attack[s]" the state-court judgment. *Id.*

Nevertheless, Salem argues that the Court may hear his case because he is not asking the Court to reinstate his law license, but rather is seeking to recover damages for the defendants' constitutional violations. This Court may exercise jurisdiction over a claim, *Rooker-Feldman* notwithstanding, when a plaintiff alleges that "out-of-court events have caused injury that the state judiciary failed to detect and repair." *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015). For example, in *Iqbal*, the Seventh Circuit held that a federal court had jurisdiction over a claim where the plaintiff sought damages for a fraud that occurred prior to and independently of state court litigation. *Id.* If a plaintiff seeks to recover for the out-of-court misconduct that caused injury independent from a court judgment, rather than to overturn the judgment itself, the court held, the plaintiff's claim may proceed. *Id.* Salem attempts to equate his claims with the fraud claim alleged in *Iqbal*.

Salem fails to persuade the Court. Regardless of Salem's requested form of recovery, the ultimate source of his injury is the Illinois Supreme Court's suspension. In both of the putative

---

Salem's case is the ability to appear in Illinois courts *pro hac vice*. Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 5 (Illinois Supreme Court Order), ECF No. 25-1.

[5] Salem mistakenly refers to the Illinois Supreme Court as the ARDC's "highest administrative appellate body." Compl. ¶¶ 71-73, ECF No. 1. The ARDC is a distinct administrative agency that the Illinois Supreme Court created to supervise registration and discipline of the attorneys of the Illinois bar. Ill. S. Ct. R. 751(a). Only the Illinois Supreme Court has the power to suspend an attorney's law license or prevent an attorney from practicing *pro hac vice*. Ill. S. Ct. R. 770.

constitutional "causes of action" set forth in his complaint, Salem alleges that "Defendant Larkin vindictively injured [him] by depriving him of his fundamental right to property, i.e. his license to practice law." Compl. ¶ 120, ECF No. 1 (emphasis omitted); *see also id.* ¶ 131 (characterizing the alleged deprivation as of the "fundamental right to [Salem's] property, which is his license to practice law in all states" (emphasis omitted)). Salem's "only support for damages" is dependent upon the result of defendants' alleged constitutional violations: his suspension. *Johnson v. Supreme Ct. of Illinois*, 165 F.3d 1140, 1142 (7th Cir. 1999).

Moreover, the defendants' alleged misconduct did not cause an injury that occurred "out-of-court," like the prelitigation fraud alleged in *Iqbal*. Salem's substantive due process claim challenges the state court's adjudication of his case, a claim that necessarily involves in-court injury and review of the state-court judgment. *See Levin*, 74 F.3d at 767. In fact, *Feldman* itself involved similar claims. *See* 460 U.S. at 486-87 (claim that state court arbitrarily and capriciously denied Feldman's petition to waive bar admission was jurisdictionally barred). That is the kind of "avenue[] of attack on attorney discipline" that courts have repeatedly shut down. *See Johnson*, 165 F.3d at 1141 (collecting cases).

The injury stemming from defendants' alleged discrimination is also inextricable from the Illinois Supreme Court decision. Even if the defendants' motivation for pursuing disciplinary action against Salem were, as he alleges, discriminatory retaliation for his lawsuit or public criticism, the misconduct that Salem complains of is the wrongful pursuit of charges. If Salem's own conduct justified the defendants' decision to initiate disciplinary proceedings, his Equal Protection claim would fail no matter the defendants' motivation. *See Miller v. City of Monona*, 784 F.3d 1113, 1121-22 (7th Cir. 2015). To find that the defendants unlawfully pursued charges against Salem, therefore, this Court would have to evaluate the validity of the Illinois Supreme

10

Court's decision that discipline was warranted. That would run afoul of *Rooker-Feldman*. *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 605 (7th Cir. 2008) (invoking *Rooker-Feldman* because determining whether defendants' representations to state court were unlawful would require reviewing the state-court decision); *Levin*, 74 F.3d at 767 n.4 (finding that plaintiff's allegations about the ARDC's "unlawful prosecution" were "merely another way to contest his disciplinary proceedings").

That Salem could have reported the ARDC's alleged misconduct to the Illinois Supreme Court reinforces the interdependence of Salem's claims and the state-court judgment. The state court, and barring that, the U.S. Supreme Court, were the proper fora in which to raise Salem's claims. *See Johnson*, 165 F.3d at 1142. Salem cannot recover damages for constitutional violations that occurred during his ARDC proceeding when he never raised them himself. "A litigant may not avoid the *Rooker-Feldman* doctrine by withholding arguments from the state court." *Id.*

Salem resists this conclusion, arguing that he could not have raised his substantive due process claims or discrimination claims before the Illinois Supreme Court. When a plaintiff lacks a reasonable opportunity to litigate claims in state court due to state-court rules or procedures, the *Rooker-Feldman* doctrine may not apply. *Jakupovic v. Curran*, 850 F.3d 898, 904 (7th Cir. 2017). *But see Kelley*, 548 F.3d 607 (questioning the validity of the "reasonable opportunity" doctrine after *Exxon Mobil*). Salem argues that he did not have a chance to challenge the ARDC Review Board's decision because the Illinois Supreme Court issued its decision *sua sponte*. A comparison of the Illinois Supreme Court Rules and the filings in Salem's case, however, rebuts that argument.

11

A party opposing a PLE may file an answer within fourteen days after the PLE is due, which is within thirty-five days of the filing of the Review Board's report. Ill. Sup. Ct. R. 753(e)(1), (4). In Salem's case, the Review Board filed its report on October 31, 2018. Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 3 (ARDC Review Board R. & R.), ECF No. 25-1. Salem therefore had until December 5, 2018 to answer Larkin's PLE. Without any response from Salem, the Illinois Supreme Court filed its order on January 29, 2019. Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 5 (Illinois Supreme Court Order), ECF No. 25-1. Far from issuing its order *sua sponte*, the Illinois Supreme Court waited until Salem's time to respond expired to issue its order. Salem had every reasonable opportunity to litigate his claims before the state court; he just missed the deadline to do so.

Salem further argues that he could not appeal the ARDC Review Board's decision because discrimination and substantive due process claims require a fact-finding hearing, which cannot be adjudicated by an appellate court. Perhaps because no such authority exists, Salem cites nothing to support this proposition. An evidentiary hearing is not a prerequisite for state supreme court or U.S. Supreme Court review of claims asserting constitutional violations. *See, e.g.*, *In re Bell*, 147 Ill. 2d 15, 34, 588 N.E.2d 1093, 1101 (1992) (addressing attorney's argument that ARDC Hearing and Review Boards denied him due process without conducting separate evidentiary hearing). Moreover, no such evidentiary hearing requirement appears in Illinois Supreme Court Rule 753(e), which governs the procedures for filing and review of PLEs. In short, Salem was "aware of the proceedings against him, . . . participated in those proceedings, and . . . had an opportunity to present [his] constitutional claims in those proceedings." *Leaf v. Supreme Ct. of State of Wis.*, 979 F.2d 589, 599 (7th Cir. 1992). He cannot now use the federal district courts to assert the claims he failed to pursue in the appropriate fora.

Finally, Salem contends that he could not raise the constitutional violations before the Illinois Supreme Court because his injury arose only after the Illinois Supreme Court's order. That argument only proves that Salem's constitutional claims depend upon the Illinois Supreme Court's suspension decision. Having returned to the core principles animating the *Rooker-Feldman* doctrine, the Court concludes that it lacks jurisdiction over any of Salem's suspension-based claims. Defendants' motion to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(1) is therefore granted.

## II. Failure to State a Claim

When the jurisdictional dust settles, only Salem's false-publication claim remains. Salem alleges that the ARDC and Larkin discriminated against him as a "class of one" by publishing the false statement. Compl. ¶ 114, ECF No. 1. Defendants move to dismiss this claim under Rule 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 684 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

Before addressing the substance of Salem's Equal Protection Claim, the Court considers the defendants' statutory defenses.[6] It has long been established that states and their agencies are

---

[6] The defendants argue that this Court should dismiss the entire complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because defendants are immune from suit under the Eleventh Amendment. Whether a defendant is a "person" subject to suit under § 1983 involves a statutory defense, rather than a constitutional one. Consistent with the principle of avoiding unnecessary constitutional questions, the Seventh Circuit has instructed district courts to address the question of statutory status as a "person" before wading into murky Eleventh Amendment waters. *See, e.g.*, *Thomas v. Illinois*, 697 F.3d 612, 613-14 (7th Cir. 2012); *Sanders v. Ind. Dep't of Child Servs.*, 806 F. App'x 478, 480 (7th Cir. 2020). Because

13

not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Accordingly, none of Salem's claims against the ARDC, a state agency, may proceed. *See Johnson*, 165 F.3d at 1140-41. Because Larkin "is a proxy for the ARDC," Salem cannot proceed with any official-capacity damages suit against Larkin either. *Ditkowsky v. Stern*, 581 F. App'x 571, 572-73 (7th Cir. 2014).

A plaintiff may, however, seek to enjoin a state official from acting unconstitutionally on the state's behalf. *See Ex Parte Young*, 209 U.S. 123, 163 (1908); *accord Berger v. N. C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2197 (2022). Salem, therefore, may seek prospective injunctive relief against Larkin for unconstitutional actions performed in his official capacity. *See Kolton v. Frerichs*, 869 F.3d 532, 536 (7th Cir. 2017). And Salem may pursue a § 1983 claim for individual-capacity damages against Larkin. *See Johnson*, 165 F.3d at 1141.

The question before the Court is whether Salem states an Equal Protection Claim against Larkin for damages and injunctive relief based on Larkin's publication of allegedly false statements on the ARDC website. In its more commonly invoked form, the Equal Protection Clause of the Fourteenth Amendment protects individuals against state and local government discrimination on the basis of protected classes. *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Courts have also interpreted the Equal Protection Clause to forbid government law enforcement officials from arbitrarily and irrationally targeting individuals to harass them. *Id.* Although a plaintiff usually must plead differential treatment from other similarly situated

---

§ 1983 does not explicitly invoke a federal court's jurisdiction, the determination of the proper defendants to sue addresses the plaintiff's ability to state a claim, rather than assert subject-matter jurisdiction. *See Ross v. Illinois*, 48 F. App'x 200, 202-03 (7th Cir. 2002) (vacating with instructions to dismiss for failure to state a claim under 12(b)(6) where district court dismissed § 1983 claim against state on jurisdictional grounds); *Obazuaye v. Ill. Dep't of Hum. Servs.*, No. 21-2426, 2022 WL 1830686, at *1 (7th Cir. June 3, 2022) (holding district court correctly dismissed § 1983 suit against state agency under 12(b)(6) after finding that state agency is not a "person" subject to suit).

individuals to state an Equal Protection claim, that requirement is redundant when the alleged harassment "has no conceivable legitimate purpose." *Id.* at 748. For example, in *Geinosky*, in the absence of a conceivable rational explanation for issuing a plaintiff dozens of bogus parking tickets, the plaintiff did not have to include in his complaint the obvious observation that other Chicago drivers were treated differently. *Id.*

Salem does not identify any similarly situated individuals whom Larkin treated more favorably. He correctly notes that he did not need to do so if Larkin's alleged conduct was so irrational that it foreclosed "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Miller*, 784 F.3d at 1121 (quoting *Scherr v. City of Chicago*, 757 F.3d 593, 598 (7th Cir. 2014)). But it is the plaintiff's burden to "negative any reasonably conceivable state of facts that could provide a rational basis" for the aberrational treatment, *id.*, and Salem falls well short of meeting this requirement. Merely alleging that Larkin harbored retaliatory motives is not enough to state a "class-of-one" claim, particularly where it is possible to conceive of a rational basis for the action; "a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity." *Id*.

It does not tax the imagination to conceive of a rational basis for publication of the summary of the ARDC's action against Salem. As discussed, Larkin asked the Illinois Supreme Court to suspend Salem's license, citing Salem's misleading representations that he was an Illinois attorney. Salem did not answer Larkin's PLE, and the Illinois Supreme Court entered its suspension order. The Illinois Supreme Court did not explain its decision, but it is reasonable to infer that Larkin interpreted the Illinois Supreme Court order as accepting his evidence of

15

Salem's dishonest conduct. And it is more than "conceivable" that Larkin was following his regulatory duties by posting a summary of this reasonable interpretation on the ARDC website.

Salem therefore fails to state an Equal Protection claim, and the Court grants defendants' motion to dismiss. Moreover, because the public records submitted in this case support a rational purpose for posting Salem's disciplinary summary, any further amendment of the complaint would be futile. Accordingly, the Court dismisses Salem's claim based on Larkin's allegedly false publication with prejudice. *See Vitrano v. United States*, 721 F.3d 802, 809 (7th Cir. 2013).

*   *   *

For the foregoing reasons, the Court grants defendants' Rule 12(b)(1) motion to dismiss Salem's claims challenging his suspension. Because those claims are dismissed on jurisdictional grounds, they are dismissed without prejudice, but they cannot be reasserted in a federal court. The Court also grants defendants' Rule 12(b)(6) motion to dismiss Salem's claim challenging the publication of his disciplinary history with prejudice. Judgment will be entered in favor of the defendants and the case will be terminated.

Dated: November 23, 2022

John J. Tharp, Jr.
United States District Judge